FILED IN CHAMBERS
U.S.D.C Atlanta

MAR 24 2011

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

INTERNETSHOPSINC.COM,

    Plaintiff,

v.

SIX C CONSULTING, INC., and
JIMMIE D. WALKER, JR.,

    Defendants.

CIVIL ACTION NO.
1:09-CV-00698-JEC

## ORDER & OPINION

This case is presently before the Court on plaintiff's Motion for Summary Judgment [15] and defendants' Motion for Partial Summary Judgment and defendant Walker's Motion for Summary Judgment [16]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion for Summary Judgment [15] should be **GRANTED IN PART** and **DENIED IN PART**, defendants' Motion for Partial Summary Judgment [16-1] should be **GRANTED IN PART** and **DENIED IN PART**, and defendant Walker's Motion for Summary Judgment [16-2] should be **DENIED without prejudice**.[1]

---

[1] See n.1 infra.

## BACKGROUND

This is a Lanham Act case arising from defendant's internet advertising campaign for practice golf mats. (Compl. [1].) Plaintiff is in the business of selling golf equipment. (Pl.'s Statement of Undisputed Material Facts ("Pl.'s Facts") [15] at ¶¶ 3-4.) One of plaintiff's products is a practice golf mat. (*Id.*) Since February, 2002, plaintiff has used the trademark "Dura Pro" to advertise the golf mats that it offers for sale over the internet. (*Id.* at ¶¶ 14-15.)

Defendant Six C Consulting, Inc. ("Six C") is also in the business of selling golf equipment.[2] (*Id.* at ¶¶ 11-12.) Like plaintiff, defendant offers a practice golf mat for sale over the internet. (*Id.* at ¶ 12.) In early 2008, defendant began using the term "Dura Pro" in a pay-per-click ("PPC") internet advertising campaign for its golf mats.[3] (Pl.'s Facts [15] at ¶¶ 23-24.)

---

[2] Defendant Walker is the sole officer of Six C, and owns 100% of its stock. (Pl.'s Facts [15] at ¶¶ 8, 10.) Plaintiff's action against Walker has been stayed, pending the disposition of his bankruptcy. (Order [32].) As a result, the Court denied without prejudice defendant Walker's motion for summary judgment. The Court thus uses the term "defendant" to refer solely to Six C.

[3] In a PPC campaign, the seller bids on keywords and phrases in a search engine so that when potential customers search on those terms the seller's ads are displayed. (Defs.' Statement of Material Undisputed Facts [16] at ¶ 3.) If the customer clicks on the ad, he is directed to a website where he can purchase defendant's products. (*Id.*)

Plaintiff discovered defendant's use of the term "Dura Pro" in January, 2009, and immediately notified defendant of its superior rights in the mark. (*Id.* at ¶¶ 35-37.) Within 48 hours, defendant ordered Channel Advisor, the company then managing the PPC campaign, to stop using the term "Dura Pro." (Defs.' Statement of Material Undisputed Facts ("Defs.' Facts") [16] at ¶ 20.) Unfortunately, Channel Advisor failed to completely suppress the term, and it remained in use in connection with defendant's campaign on an MSN search engine. (*Id.* at ¶¶ 21-24.)

Plaintiff filed this action on March 13, 2009, asserting a federal claim for trademark infringement and a state claim for unfair competition. (Compl. [1] at ¶¶ 27-41.) Upon its receipt of service in the action, defendant again contacted Channel Advisor and ordered it to stop using the term "Dura Pro." (Defs.' Facts [16] at ¶ 24.) Channel Advisor finally suppressed the term on April 2, 2009. (*Id.*)

The parties have filed cross-motions for summary judgment, which are presently before the Court. (Pl.'s Mot. for Summ. J. [15] and Defs.' Mot. for Summ. J. [16].) Defendant concedes that it infringed plaintiff's trademark rights by using the term "Dura Pro" in its PPC campaign. (Defs.' Br. in Supp. of Summ. J. ("Defs.' Br.") [16].) The only dispute concerns the appropriate relief on plaintiff's claims. (*Id.* at 9-13.) Plaintiff argues that it is entitled to damages, costs, and attorney's fees, as well as an accounting of

3

defendant's profits and permanent injunctive relief. (Pl.'s Br. in Supp. of Summ. J. ("Pl.'s Br.") [15] at 17-22.) Defendant contends that there is insufficient evidence to support an award of damages or profits, and that injunctive relief and attorney's fees are not warranted under the circumstances.[4] (Defs.' Br. [16] at 9-13.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to

---

[4] Plaintiff makes additional arguments with respect to defendant Walker. (Pl.'s Br. [15] at 22-24.) As the action is stayed as to Walker, the Court does not address those arguments.

make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. The requirement is that there be "no *genuine* issue of material fact." *Id.*

## II. Liability and Costs

As noted above, defendant concedes that its use of the term "Dura Pro" infringed plaintiff's trademark rights. (Defs.' Br. [16] at 2.) The Court thus **GRANTS** plaintiff's motion for summary judgment as to liability under the Lanham Act. Defendant does not respond to plaintiff's claim for costs under the Lanham Act, and the Act expressly permits a successful plaintiff to recover the costs of an action to enforce a trademark. See 15 U.S.C. § 1117(a). Accordingly, the Court also **GRANTS** plaintiff's motion for summary judgment on its claim to recover the costs of this action. Pursuant to this ruling, the Court directs plaintiff to submit a bill of costs by **Friday, April 22, 2011**. The bill of costs should comply with 28 U.S.C. § 1924. If defendant chooses to respond to the bill of costs, it should file a response by **Friday, May 6, 2011**.

## III. Additional Relief

In addition to the costs of the action, the Lanham Act provides for a prevailing plaintiff's recovery of (1) any damages sustained as a result of defendant's infringement and (2) defendant's profits from the infringement.[5] See 15 U.S.C. § 1117(a). Under certain circumstances, a plaintiff may also recover treble damages and

---

[5] The Court need not separately discuss plaintiff's state law claims, as the relief available is the same as under the Lanham Act.

6

reasonable attorney's fees. *Id.* Finally, if equity permits, a Court may impose a permanent injunction upon the infringing party. 15 U.S.C. § 1116(a). In its motion for summary judgment, plaintiff argues that it is entitled to each of these forms of relief. (Pl.'s Br. [15] at 22.)

### A. Actual Damages

In order to recover damages under the Lanham Act, plaintiff must show that it has actually suffered harm as a result of defendant's infringement. *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir. 1994). *See also Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564 (11th Cir. 1986)(explaining that there must be "some evidence of harm arising from the [trademark] violation" for a plaintiff to recover damages). Although the calculation of damages need not be exact, it must be demonstrated with some degree of specificity. *Ramada Inns, Inc.*, 804 F.2d at 1565-66. Generally, actual damages are established through evidence of lost sales caused by defendant's infringement. *Babbit Elec.*, 38 F.3d at 1182.

Plaintiff claims that it suffered damages in the amount of $123,784.80 as a result of defendant's infringement. (Pl.'s Br. [15] at 18.) The only evidence plaintiff offers in support of that claim is the affidavit of its President and CEO, Ava Quail. (*Id.*) Quail states in her affidavit that plaintiff's average monthly golf mat sales prior to and after the infringement was 306, while average

7

monthly sales during the infringement period was 166. (Quail Aff. [15] at ¶¶ 32-33.) She further states that plaintiff's average profit on each golf mat sale during the relevant time period was $63.13. (*Id.* at ¶ 36.) Quail arrives at the $123,784.80 figure by multiplying the decrease in average monthly sales (140) by the number of months that the infringement continued (14) and the average profit on each sale ($63.13). (*Id.* at ¶ 37.)

The Quail affidavit does not provide a rational basis for awarding, or a reasonable methodology for calculating, actual damages. As an initial matter, Quail's affidavit is not supported by any underlying sales data or business records. *See Ramada Inns, Inc.*, 804 F.2d at 1564 ("a trademark infringement award must be based on *proof* of actual damages")(emphasis added). Indeed, the only document that is referenced by Quail, or that appears in the record, is a spreadsheet that purports to show plaintiff's monthly sales of golf mats between January, 2007 and August, 2009. (Sales Spreadsheet [24].) Like Quail's testimony, the spreadsheet is not based on any underlying sales documents. Apparently Quail simply generated the spreadsheet based on her "personal knowledge" of plaintiff's business. (Pl.'s Reply [25] at 6.)

Moreover, even a cursory review of the spreadsheet shows that Quail's "analysis" is too seriously flawed to raise an issue of fact as to damages. For some unspecified reason, Quail used monthly

8

averages to calculate lost sales during the infringement period. (Quail Aff. [15] at ¶¶ 32-33.) Based on her calculations, plaintiff's average golf mat sales prior to and after the infringement was 306. (*Id.*) However, it is apparent from the spreadsheet that this number was significantly inflated by an inexplicably high number of golf mat sales in May, 2007. (Sales Spreadsheet [24].) Conversely, the figure for average sales during the infringement period appears to have been deflated by a few months with exceptionally low sales. (*Id.*)

There are numerous other anomalies in the spreadsheet relied upon by Quail. For example, plaintiff's sales in March, 2008, during the infringement period, were significantly higher than sales in January, 2008 or October, 2007, before the infringement began. (*Id.*) In addition, plaintiff's March, 2008 sales were similar to its sales in August, September and November, 2007. (*Id.*) These figures do not comport with plaintiff's theory or with Quail's assessment of damages in her affidavit.

Even assuming that the spreadsheet shows some unquantifiable decline in plaintiff's sales during the infringement period, there is no evidence to suggest that the decline occurred as a result of defendant's infringement. The Quail affidavit is not very helpful on this point, because Quail offers no reasonable basis for determining whether any decline in sales was caused by defendant's infringement,

9

as opposed to some other or multiple other factors. Nor could she, as she admittedly is not an expert in the market factors that could cause such a decline. (Pl.'s Reply [25] at 8.) Rather, Quail simply assumes that a decline in sales was caused by defendant's activities because it coincided with them. In the absence of any other evidence on damages, Quail's assumption is insufficient to withstand summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)("unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion")(internal citations omitted).

It is axiomatic that in order to be awarded damages, plaintiff must first prove them. *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992)(Posner, J.)("people who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence"). An award of damages based on the proof that plaintiff offers would be entirely speculative, and is therefore precluded. *Cordoba*, 419 F.3d at 1181. Accordingly, plaintiff's motion for summary judgment on its claim for damages is **DENIED** and defendants' motion for summary judgment on plaintiff's claim for damages is **GRANTED**. As the Court finds that plaintiff is not entitled to actual damages, it **DENIES** plaintiff's request for treble damages and **GRANTS** defendants' motion for summary judgment as to treble damages.

## B. Defendant's Profits

An alternative ground for recovery under the Lanham Act is based on the defendant's profits. *See* 15 U.S.C. § 1117(a). In order to recover under this theory, plaintiff must present some evidence of defendant's sales. *Id.* *See also Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1487-1488 (11th Cir. 1987)(noting that the plaintiff must prove an infringer's sales in order to be entitled to an accounting of profits under the Lanham Act). Again, plaintiff has not presented sufficient evidence to withstand summary judgment on this issue.

Plaintiff concedes that it "does not currently possess any facts that show the extent of Defendants' profits, if any, resulting from its infringing activities." (Pl.'s Resp. [20] at 15). Nor does plaintiff even attempt to present any evidence of defendant's sales. At this stage in the litigation, plaintiff's admission that it lacks any facts on the issue, and the absence of any other evidence in the record concerning defendant's sales, are a sufficient basis upon which to grant summary judgment. *Anderson*, 477 U.S. at 247-48 and *Cordoba*, 419 F.3d at 1181.

Moreover, the available evidence on the issue suggests that defendant did not realize any profits as a result of its use of the term "Dura Pro." As mentioned, defendant used the term solely in connection with a PPC internet advertising campaign. (Def.'s Facts

11

[16] at ¶ 2.)  One of the features of a PPC campaign is that it allows a seller to track how many times its website appeared as a result of a search for a keyword (called "impressions"), how many times a potential customer clicked on the seller's website following a search (called "clicks"), and whether the customer purchased anything from the website following the search (called "conversions").  (*Id.* at ¶ 4.)  In the internet advertising industry, it is standard practice to rely on this type of search data, which is generated by search engines such as Google.  (Hill Decl. [21] at ¶¶ 4, 9.)

The search data from defendant's PPC campaign shows that during the infringement period there were 1,319 impressions resulting from searches for the term "Dura Pro."  (Second Walker Decl. [21] at ¶¶ 4, 6 and Ex. A.)  Only 95 of those impressions resulted in a click, after which a potential customer was directed to defendant's website.  (*Id.*)  However, not one of those clicks resulted in a conversion, or a sale, of anything.  (Defs.' Facts [16] at ¶ 14.)

Given the evidence that defendant did not sell anything as a result of its infringement, and plaintiff's admitted lack of any evidence to the contrary, there is no basis in this case for an award of profits under the Lanham Act.  See *Wesco Mfg., Inc.*, 833 F.2d at 1487-88.  Accordingly, the Court **DENIES** plaintiff's motion for summary judgment on its claim for an accounting of defendant's

12

profits and **GRANTS** defendant's motion for summary judgment as to an award of profits.

### C.   Injunctive Relief

Permanent injunctive relief against an infringer is generally available under the Lanham Act.  15 U.S.C. § 1116.  While injunctions against an infringing party are frequently granted in ordinary trademark infringement actions, a plaintiff is never automatically entitled to one.  See *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006)(rejecting categorical approaches to equitable relief).  Rather, in order to obtain injunctive relief, a plaintiff must demonstrate that:

> (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

*Angel Flight,* 522 F.3d at 1208.

Defendant does not contest the last three elements, nor could it reasonably do so.  (Defs.' Br. [16] and Defs.' Resp. [21].)  As evidenced by the above discussion, the business damage caused by defendant's unauthorized use of plaintiff's trademark is difficult, if not impossible, to quantify.  See *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989)("It is generally

recognized in trademark infringement cases that . . . there is not [an] adequate remedy at law to redress infringement")(internal citations omitted). The balance of hardships clearly favors plaintiff, as defendant admits that its use of the term "Dura Pro" was unlawful. (Defs.' Br. [16] at 2.) As for the public, it "deserves not to be led astray by the use of inevitably confusing marks." *Id.*

Nevertheless, defendant argues that an injunction is not warranted because plaintiff has failed to show that it suffered an irreparable injury. (Defs.' Resp. [21] at 13.) In support of its argument, defendant correctly notes that the Court cannot presume irreparable harm based on a finding of infringement. (*Id.*) See *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227-28 (11th Cir. 2008). However, the Court need not rely on a presumption to award injunctive relief in this case, as there is sufficient record evidence of irreparable harm.

It is undisputed that plaintiff has used its "Dura Pro" trademark in commerce for the sale of golf mats since 2002. (Pl.'s Facts [15] at ¶¶ 15-16.) In connection with its use of the mark, plaintiff has invested a significant amount of time and money advertising its golf mats over many different media, including the internet. (*Id.* at ¶¶ 17-18.) As a result, plaintiff is well known in the industry, and has established a certain amount of goodwill

14

amongst the public, for selling high quality golf mats under the "Dura Pro" mark. (*Id.* at ¶¶ 19, 39.)

Defendant's unauthorized use of the "Dura Pro" mark for over a year inevitably diluted the goodwill that plaintiff established in connection with the mark. *See Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005)(explaining that "irreparable injury" includes "loss of control of reputation, loss of trade, and loss of goodwill"). This is true regardless of the fact that defendant's unauthorized use appears to have been unintentional, and that it did not result in any readily quantifiable harm to plaintiff. *Id.* at 190-91 ("'[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.")(quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)).

Moreover, defendant has previously failed to ensure that its use of plaintiff's mark ceased after being notified of the infringement. (Defs.' Facts [16] at ¶¶ 21-24.) Given that fact, an injunction is particularly warranted here. The injunction will properly place the onus on defendant to take whatever steps are required to ensure that it does not infringe plaintiff's trademark rights in the future,

15

rather than requiring plaintiff to constantly monitor defendant's actions.

In short, there is no reasonable basis for defendant to resist an injunction preventing it from engaging in admittedly unlawful conduct. *See* J. THOMAS MCCARTHY ON TRADEMARKS § 30.11 (4th ed. 2004)("If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its trademark."). Accordingly, the Court **GRANTS** plaintiff's motion for summary judgment to the extent that it seeks a permanent injunction and **DENIES** defendant's motion as to injunctive relief. Plaintiff should submit a proposed injunction to the Court by **Friday, April 22, 2011**. If defendant chooses to respond to the proposed injunction, it should file a response by **Friday, May 6, 2011**.

### D.   Attorney's Fees

Finally, the Lanham Act permits an award of attorney's fees to a prevailing party in "exceptional cases." *See* 15 U.S.C. § 1117(a). An exceptional case is one in which "the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (internal quotations omitted). Even if a case is exceptional, "the decision to grant attorney fees remains within the discretion of the

16

trial court."[6]  *Id.*

There is no evidence in the record to suggest that defendant acted in a "malicious, fraudulent, deliberate, or willful manner." While defendant admits to direct infringement of plaintiff's mark, it credibly argues and presents substantial evidence that the infringement was unintentional. (Defs.' Facts [16] at ¶¶ 20-24.) Defendant was not aware of plaintiff's rights to the "Dura Pro" mark until it was contacted by plaintiff in January, 2009. (*Id.* at ¶ 14.) Within 48 hours of plaintiff's contact, defendant acted, albeit not entirely effectively, to eliminate the term "Dura Pro" from the PPC campaign. (*Id.* at ¶ 20.) Under the circumstances, the Court finds that an award of attorney's fees is not warranted. Plaintiff's motion for summary judgment as to attorney's fees is thus **DENIED** and defendant's motion for summary judgment as to attorney's fees is **GRANTED**.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment [15], **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Partial Summary Judgment

---

[6] The parties have submitted evidence and thoroughly briefed the Court on the attorney's fees issue. Plaintiff's request for leave to file a detailed motion or conduct a hearing to put forth additional evidence as to attorney's fees is thus **DENIED** as unnecessary.

[16-1], and **DENIES WITHOUT PREJUDICE** Defendant Walker's Motion for Summary Judgment [16-2].

The Court directs plaintiff to submit a bill of costs and a proposed injunction to the Court by **Friday, April 22, 2011**. If defendant chooses to respond to either filing, it should submit its response by **Friday, May 6, 2011**.

SO ORDERED, this 24 day of March, 2011.

JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

18